DECISION ON OBJECTION TO THE MAGISTRATE'S DECISION
{¶ 1} Relator, Rita Spillman, filed this original action in mandamus. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate of this court. On November 12, 2004, the magistrate rendered a decision, including findings of fact and conclusions of law, and therein recommended that this court deny the writ. (Attached as Appendix A.) Relator timely filed an objection to the magistrate's decision, which is now before the court.
 {¶ 2} Relator lodges no objection to the magistrate's conclusion that Dr. Reynolds' report constitutes "some evidence" supporting the order of respondent, Industrial Commission of Ohio ("the commission") denying relator's application for permanent total disability compensation. Rather, relator's only contention in her objection is that if Dr. Saul's report (the second report relied upon by the commission) is not "some evidence," a proposition with which relator apparently believes the magistrate does not disagree, then "we should give the commission the chance to reconsider the merits of relator's application to determine whether the commission would rely upon the sole remaining report to deny PTD." (Objection of Relator, at 2.)
 {¶ 3} However, "[w]here the record contains some evidence to support the commission's factual findings, such findings will remain undisturbed and are not subject to an action in mandamus." State ex rel. Hudson v.Indus. Comm. (1984), 12 Ohio St.3d 169, 170, 465 N.E.2d 1289. In the present case, there is some evidence in the record that relator is capable of sustained remunerative employment. Therefore, there is some evidence that relator is not permanently and totally disabled and that it was not an abuse of discretion for the commission to deny her application for permanent total disability compensation. Thus, no writ of mandamus ordering remand and a reweighing of the evidence is required or permitted.
 {¶ 4} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objection, we overrule the objection and find that the magistrate sufficiently and correctly discussed and determined the issues raised. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objection overruled; writ of mandamus denied.
Bryant and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. :
Rita Spillman, :
 Relator, :
 :
v. : No. 04AP-456
 :
Industrial Commission of Ohio and : (REGULAR CALENDAR)
Buckeye Valley Local School District, :
 Respondents.
 MAGISTRATE'S DECISION Rendered on November 12, 2004 Law Offices of Thomas Tootle Co., L.P.A., and Thomas Tootle, for relator.
Jim Petro, Attorney General, and William McDonald, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 5} Relator, Rita Spillman, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied her application for permanent total disability ("PTD") compensation and asking that the commission be ordered to re-evaluate the merits of relator's application without considering the September 15, 2001 report of Dr. Kenneth Saul.
Findings of Fact:
 {¶ 6} 1. Relator has sustained four separate work-related injuries which are pertinent to the within matter and her claims have been allowed as follows:
[Claim # 99-544241] has been previously allowed for: Fracture upper end of left tibia; fracture left distal fibula fracture; left lateral meniscus tear; sprain left knee; post traumatic arthritis of the left knee.
Claim # 94-381657 has been allowed for: Contusion of upper arm, right.
Claim # 95-453230 has been allowed for: Lumbar sprain; lumbar spondylosis with hypertrophic changes at L4-5; disc protrusion at L5-S1. (Claim # 95-453230) has been previously disallowed for: Degenerative osteoarthritis at L5-S1.
Claim # 99-353449 has [been] allowed for: Sprain of wrist nos left; sprain of knee leg nos, left; sprain thoracic region; constusion of buttock.
(Emphasis omitted.)
 {¶ 7} 2. Relator filed her application for PTD compensation on July 22, 2002, supported by the November 16, 2001 report of Dean J. Gray, D.C., who opined as follows:
Due to structural weaknesses in the thoracic and lumbar area, traumatically induced, and the neurological defects manifested, it is apparent that the patient's symptoms are going to be recurrent. She can expect intermittent exacerbations of pain and stiffness in the thoracic and lumbar spine.
When considering the combined effect of all of her injuries, including the serious leg injury in 1999 and the discogenic pathology documented by the MRI, it is my personal opinion that Mrs. Spillman is permanently and totally disabled from gainful employment because of these injuries. The lumbar spondylosis with arthritis and disc protrusion are definitely traumatic in origin and are far greater than what one would expect simply for the natural aging process for this individual who is presently 50 years of age.
 {¶ 8} 3. The record also contained the September 15, 2001 report of Dr. Kenneth W. Saul, D.O., who listed the following allowed conditions: "FX upper end tibia-close left; * * * fx lateral malleolus-cl left; * * * tear lat menisc knee-cur left; * * * sprain of knee leg nos left; * * * arthropathy nos-l/leg left." (Emphasis omitted.)
 {¶ 9} Following his recitation of his findings on examination, Dr. Saul opined that relator had reached maximum medical improvement, opined that she could not return to her former position of employment because she is currently utilizing a crutch, but that if modified work duty was available, she could do a sit down type position since she has no problem using her hands and arms. With regard to functional limitations, Dr. Saul noted the following:
No prolonged standing or walking. No bending or stooping. Sitting can be unlimited. She is only able to stand for ½ hour to 1-hour at a time. She is only able to walk 200-feet, secondary to using a cane. She is unable to squat or crawl. Climbing can only be occasionally. She is only able to lift 5-10 pounds occasionally and nothing over 20-pounds, secondary to her left knee problems. She is unable to use her left leg for repetitive motion or leg control. A modified work duty can be accomplished if the employer has one available. This injured worker has refused vocational rehabilitation in the past. I now consider her MMI.
 {¶ 10} 4. Relator was also examined by William Reynolds, M.D., who issued a report dated October 10, 2002. Dr. Reynolds examined relator for the following allowed conditions:
99-544241 10/15/1999 fracture upper end of left tibia; fracture left distal fibula fracture; left lateral meniscus tear; sprain left knee; post traumatic arthritis of the left knee.
94-381657 05/05/1994 contusion of upper arm, right.
95-453230 03/10/1995 lumbar sprain; lumbar spondylosis with hypertrophic changes at L4-5; disc protrusion at L5-S1.
99-353449 03/19/1999 sprain of wrist nos left; sprain of knee 
leg nos, left; sprain thoracic region; contusion of buttock.
(Emphasis omitted.)
Dr. Reynolds concluded as follows:
It is my feeling at this point she has reached a level of MMI. Using the AMA Guides, Fourth Edition, based on Table 64, a fracture of the tibial plateau would give her a 5% distal fibular fracture nondisplaced, 0%, lateral meniscus tear, 1%, arthritis, 8%. Her contusion of the right upper arm would give her 6%. Lumbar spondylosis, disc protrusion, impairment of function would be in the range of 10%. Sprain left wrist, left knee and left leg, 1%. Sprain thoracic region, 5%. Contusion of buttocks, 0%. On a combined effects basis, this would give her a PPI of function of the person as a whole in the range of 32%.
 {¶ 11} Dr. Reynolds completed a physical strength rating form and indicated that relator was capable of performing sedentary work.
 {¶ 12} 5. An employability assessment report was prepared by Charles Loomis, MED. Based on the medical reports of Drs. Reynolds and Saul, Mr. Loomis concluded that relator could immediately perform the following jobs: "Sorter[,] Stuffer[,] Engraver[,] Surveillance System Monitor." Assuming seventh to eighth grade academic abilities, Mr. Loomis listed the following additional jobs: "Routing Clerk[,] Referral Information Clerk[,] Order Clerk[,] Scheduler, Maintenance."
 {¶ 13} 6. Mr. Loomis concluded that relator's age of 51 would not affect her ability to meet the basic demands of entry level occupations, that her tenth grade education and the fact that she reports no difficulties in reading, writing, or performing arithmetic computations would not negatively impact her. Regarding her work history, Mr. Loomis noted that relator was engaged in work which is primarily hands-on and of a semi-skilled nature and that any acquired skills would tend to be job specific and offer minimal transferability. Mr. Loomis lastly noted that relator participated in rehabilitation but indicated that she has no current desire to participate.
 {¶ 14} 7. Relator's application was heard before a staff hearing officer ("SHO") on January 14, 2003 and resulted in an order denying her application. The SHO relied on the medical reports of Drs. Reynolds and Saul as well as relator's own testimony to conclude that relator's physical limitations would not preclude her from performing sedentary work. The SHO also accepted that relator was capable of performing those jobs identified by Mr. Loomis. The SHO then provided an analysis of the nonmedical disability factors. The SHO noted that relator was 48 years old at the time she was injured and was currently 52 years of age. The SHO found that her age was overall viewed as a positive vocational asset. Furthermore, the SHO noted that relator's educational level, in combination with her ability to read, write, and perform basic math, would assist her in obtaining and performing the entry-level unskilled types of employment identified by Mr. Loomis. The SHO specifically found that employment as a sorter, stuffer, engraver, surveillance system monitor, clerk and maintenance scheduler would not require skills beyond the limited education which relator currently had. The SHO concluded that relator's past employment experiences document her ability to carry out instructions, an ability to relate to others, an ability to instruct others, and an ability to organize and communicate clear directives despite her limited education. With regard to rehabilitation, the SHO noted that claimant had been contacted on several occasions in the past and detailed her experiences. Ultimately, the SHO concluded that relator's lack of effort and interest to pursue rehabilitation in the past was significant. The commission found that relator was a younger individual and that despite numerous attempts by the rehabilitation department to assist her, she refused or failed to respond to at least two attempts to participate in rehabilitation. Considering not only her past employment skills, but those skills which may have been reasonably developed, and considering her failure to undergo rehabilitation or retraining that would have permitted her to return to work, the commission concluded that relator was not permanently and totally disabled.
 {¶ 15} 8. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law:
 {¶ 16} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v.Indus. Comm. (1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond Foundry Co. (1987),29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 17} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State ex rel. Stephenson v. Indus. Comm. (1987),31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v. Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel.Noll v. Indus. Comm. (1991), 57 Ohio St.3d 203.
 {¶ 18} Relator challenges the commission's order in only one respect: relator contends that Dr. Saul did not examine her for all the allowed conditions; therefore, Dr. Saul's report did not constitute some evidence upon which the commission could rely in denying her application for PTD compensation. In response, the commission argues that, even if this court were to determine that Dr. Saul's report did not constitute some evidence upon which the commission could rightfully rely, there is no error on the face of or within the report of Dr. Reynolds and, inasmuch as the commission also relied upon the report of Dr. Reynolds for his conclusion that relator was capable of performing some sedentary employment, then this court should not disturb the commission's order denying relator's PTD application. The magistrate agrees with the position advanced by the commission.
 {¶ 19} In this mandamus action, relator does not challenge the October 10, 2002 report of Dr. Reynolds in any respect. Based upon review of that report, it is apparent that Dr. Reynolds did examine relator for all the allowed conditions. Thereafter, as indicated previously, he assessed a 30 percent whole person impairment and opined that relator was capable of performing work at a sedentary level as such is defined in the Ohio Administrative Code. Dr. Reynolds' report, in and of itself, constitutes some evidence upon which the commission could properly rely in determining that relator could perform sedentary work. Absent the report of Dr. Saul who only examined for the conditions allowed in the 1999 claim, the report of Dr. Reynolds constitutes "some evidence" in support of the commission's determination that she was capable of performing at a sedentary level. Inasmuch as relator does not challenge the commission's analysis of the nonmedical disability factors, it is the magistrate's decision that this court deny relator's application for a writ of mandamus as the commission's order is supported by some evidence and, in all other respects, meets the requirements of law. As such, this court should deny relator's request for a writ of mandamus.
 /s/ Stephanie Bisca Brooks
 STEPHANIE BISCA BROOKS
 MAGISTRATE